UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARTHA A. WANCA, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Case No. 17-2343<br>) |
| ERIC D. HARGAN, | )<br>)<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION

This case concerns officer promotion in the U.S. Public Health Service (PHS), a division of the Department of Health & Human Services (HHS) and one of the country's seven uniformed services.

Commander Martha Wanca asked PHS to waive a prerequisite for promotion. When PHS refused, Wanca filed suit under the Mandamus Act and the Administrative Procedure Act (APA), asking this Court to force HHS to waive the prerequisite and to resolve Wanca's related Equal Opportunity (EO) complaint.

But two flaws doom her claim. First, mandamus cannot mandate discretionary government action. Second, APA relief is either unavailable (because PHS did not act arbitrarily or capriciously) or moot (because PHS already acted on Wanca's EO complaint). The Court will grant the government's summary judgment motion and deny Wanca's cross-motion.

## I. Background

### A. The PHS Commissioned Corps

PHS seeks to protect, promote, and advance our nation's health and safety by responding to disasters, supporting care to underserved populations, and overseeing cutting-edge research.

Led by the Surgeon General of the United States, PHS organizes its 6500 officers into eleven "professional categories": physicians, dentists, nurses, therapists, pharmacists, health service providers, environmental health professionals, dietitians, engineers, veterinarians, and scientists. Commissioned Corps Instruction (CCI) 122.01 § 6-1 (2011), https://dcp.psc.gov/ccmis/ccis/documents/CC122.01.pdf.

Within these categories, promotion follows a rank grade like the Navy, though it uses a different naming convention. Officers move sequentially from "junior assistant" (akin to ensign) to "assistant" (junior lieutenant) to "senior assistant" (lieutenant) to "full" (lieutenant commander) to "senior" (commander) to "director" (captain). CCI 231.01 at app. (2018), https://dcp.psc.gov/ccmis/ccis/documents/CCI2_3_1_01.pdf. The HHS Secretary sets the number of officers for each grade based on PHS's anticipated needs, available funds, and the officers already in each grade, as well as the anticipated appointments, promotions, and retirements. 42 U.S.C. § 207(d).

42 U.S.C. § 211 governs the promotion process. Though it tasks the President with filling in additional details via regulation, *see* § 211(a), (k), the President delegated this authority to HHS. *See* Exec. Order No. 11,140 § 1(f), 29 Fed. Reg. 1637 (Jan. 30, 1964). HHS publishes its regulations in the Commissioned Corps Issuance System, available online at https://dcp.psc.gov/ccmis/ccis/CCISToc.aspx?ShowTOC=Y.

### 1. The Promotion Process

Section 211(a) identifies three kinds of potential promotions: "permanent promotions based on length of service, other permanent promotions to fill vacancies, or temporary promotions." Each has a slightly different set of requirements and procedures.

### i. Permanent Promotions Based on Length of Service

Length-of-service-based permanent promotions occur automatically once an officer serves a set time in a grade and once the Annual Permanent Promotion Board (APPB) deems them qualified. CCI 331.01 § 6-4 (2008), https://dcp.psc.gov/ccmis/ccis/documents/CCI_331.01.pdf. Section 211(d)(2) contemplates length-of-service-based permanent promotions to senior assistant grade after three years as an assistant officer; to full grade after seven years as a senior assistant officer; and to senior grade after seven years as a full officer.

But in practice, noncompetitive promotions stop at the senior assistant grade. As § 211(b) allows, the Surgeon General limits full and senior grade promotion to filling vacancies. CCI 331.01 § 6-6(a).

### ii. Permanent Promotions to Fill Vacancies

An officer must clear three hurdles to obtain a permanent vacancy-filling promotion. First, like length-of-service-based promotions, the APPB must deem the candidate qualified. *Id.* § 6-4. Candidates become eligible for APPB examination after spending a certain time in their current grade. *Id.* § 6-2(a)(1). Second, the APPB examines all eligible candidates, determines which it will recommend for promotion, and ranks the recommended candidates according to their capabilities and performances. *Id.* § 6-5. Third, the APPB forwards this ranking to the Surgeon General, who—based on a predetermined cut-off—sends a final list to the Assistant Secretary for Health. *Id.* § 6-6.

A senior grade officer becomes eligible for APPB examination four years after her permanent promotion to senior grade. *Id.* § 6-2(a)(1)(a). But before an officer can be permanently promoted, PHS policies require her to serve one year in that grade on a temporary basis. *Id.* § 6-2(c). Put another way, PHS imposes a one-year temporary trial period before an

3

officer's permanent promotion to a new grade. So it actually takes five years as a senior grade officer to be eligible for promotion examination: one year on a temporary basis, plus four years on a permanent basis.

The APPB examines eligible candidates annually. *Id.* § 6-4(a). It uses a standard rubric to assess the candidate's performance reviews, professional qualifications, advancement potential, prior service, and response readiness. *Id.* §§ 6-4–6-5. From this examination, the APPB lists candidates recommended for promotion, ranking the recommended candidates according to their average score. *Id.* § 6-5(c).

The APPB's ranking goes to the Surgeon General, who verifies the recommended candidates meet basic compliance requirements, *see id.* § 8-2, and applies a predetermined cut-off score based on the total vacancies. *See* § 211(c); CCI 331.01 § 6-6. But before doing so, the Surgeon General can alter the ranking at his discretion. *See* CCI 331.01 § 6.5(f), ("Notwithstanding the recommendation of the promotion board, the SG . . . may rescind a board's promotion recommendation of 'not recommend' when upon evaluation it is determined that the officer's record does not support such a recommendation."); *id* § 8-2(a) ("The SG will ensure that the final approval list for permanent promotions is complete after eliminating any officer . . . [w]ho, based on additional information available to the SG is found either not qualified or not suitable for promotion . . . ."). The Surgeon General sends his final recommendations to the Assistant Secretary. *Id.* § 6-5(e).

### iii. Temporary Vacancies

Obtaining a temporary promotion is even more complicated: an officer must either clear multiple requirements for Annual Temporary Promotion Board (ATPB) examination or be

4

nominated for an Exceptional Proficiency Promotion (EPP). *See* CCI 332.01 (2008), https://dcp.psc.gov/ccmis/ccis/documents/CCI_332.01.pdf.

To be eligible for ATPB examination, a senior grade officer must have twenty-four years of Training and Experience Date (TED) credit, nine years of active duty service as a commissioned officer (including three years in PHS), and three years of experience as a senior grade officer. *Id.* at app. TED credit reflects the officer's relevant education and experience, as well as her subsequent uniformed service. CCI 231.01 § 6-2(a)(1) (2018). For instance, a commissioned officer with a Masters of Science in Nursing (MSN) receives six years of TED credit for the time spent obtaining her education, in addition to credit for subsequent training or uniformed service as a nurse. *See id.* §§ 6-2(c)(3), (e)(1).

But mechanically applying these requirements occasionally excludes candidates whose unusual experiences or special qualifications make them well-suited for promotion. So for these candidates, PHS lets their division head nominate them for an EPP. CCI 332.01 §§ 6-8(a), (c). Division heads can award EPPs for up to five percent of their division, but a candidate can be nominated only once per grade. *Id.* § 6-8(c)(1). Once nominated, the ATPB examines the EPP candidate alongside officers otherwise eligible for examination. *Id.* § 6-8(d). Put differently, the EPP recipient does not receive any special treatment during ATPB examination; an EPP merely provides a one-time backdoor to temporary promotion examination.

ATPB examination resembles APPB examination—especially for temporary promotions above the senior grade, which like their permanent analog still "depend on the requirements of the Corps." *Id.* § 6-5(a). And, just as for vacancy-filling permanent promotions, the Surgeon General may alter the ATPB's recommendations before approval by the Assistant Secretary. *Id.* §§ 8-1(m); 8-2(a)(5).

5

## 2. The Grievance Process

PHS provides an internal grievance process for officers "who believe they have been wronged by an official action." CCI 211.04 § 1 (2015), https://dcp.psc.gov/ccmis/ccis/documents/CC211%2004.pdf. The official action must be a "[d]iscretionary act[] or omission[] of a supervisor or senior official that has a direct and adverse effect," an act "[b]eyond" a supervisor or senior official's "legitimate authority," "[a]rbitrary, capricious, or an abuse of discretion," or "[c]learly unfair (e.g., selective application of standards)." *Id.* § 6-3. To lodge a grievance, the officer must submit a written complaint to her immediate supervisor within thirty days after the challenged action. *Id.* § 8-4(a). That supervisor reviews the complaint, *see id.* § 6-1(d), and must provide the officer with a written decision within thirty days. *Id.* § 8-4(b). The officer has ten days to appeal to the next highest official, *id.* 8-4(c)–(d), and may continue appealing all the way to the Surgeon General. *Id.* § 8-8.

## 3. The Equal Opportunity Complaint Process

As true for all uniformed service members, federal antidiscrimination laws do not protect PHS commissioned officers. *See* CCI. 211.03 § B(3) (2001), https://dcp.psc.gov/ccmis/ccis/documents/CCPM26_1_6.pdf. But if a PHS officer thinks an official action amounts to race, color, religion, sex, national origin, age, or disability discrimination, PHS allows them to submit a complaint to an internal EO reviewer. *Id.* § E(1).

The complaint must be in writing and submitted within sixty days after the alleged discrimination. *Id.* § F(2). But if the complaining officer identifies additional information after filing her complaint, it "shall be included" in the complaint, though she "bears the burden of proof that this information is relevant and could not have been included in the original." *Id.* § I(2).

6

Next, the EO officer investigates the complaint and develops the "ROI," a "detailed, complete, and accurate written record" of the investigation. *Id.* § F(2)(c)(8). The EO officer must give the complaining officer a copy of the ROI within ninety days of the complaint. *Id.* § F(2)(c)(9). If he misses this deadline, the complaining officer can obtain an expedited review by a representative from the Surgeon General's Policy Advisory Council (SGPAC), senior level officers who advise the Surgeon General on commissioned corps policy matters. *Id.*; *id.* § D(14).

The complaining officer has thirty days to review, comment on, and supplement the ROI. *Id.* § F(2)(c)(10). And within thirty days after receiving those comments, the EO officer must submit a recommended decision to the Surgeon General for review. *Id.* § F(2)(c)(10)(c). If the EO officer fails to forward his recommended decision within thirty days, the complaining officer may send the Surgeon General the original complaint and ROI. *Id.* In either event, the Surgeon General has thirty days to issue a final written decision or to remand the complaint for further investigation. *Id.* § F(2)(f).

### B. Martha Wanca's Career

Wanca is a decorated officer with nearly twenty-five years as a nurse in the uniformed service. R. 6-7. She has been a nurse for even longer, since 1969. R. 7. In 1991, she completed her Bachelors of Science in Health Care Administration, qualifying her to serve as a nurse in the Air Force Reserves. R. 6-7. Over the next decade, the Air Force promoted her to major. R. 6. Yet because she joined the Air Force Reserves past the age limit for commissioning, her future was limited—she could not retire with benefits and would have been mandatorily separated in 2003. R. 45.

In 2002, she completed her MSN, which—along with her prior service in the Air Force Reserves—allowed her to join PHS as a commissioned officer. R. 9, 32; CCI 231.01 § 6-1(b)(2);

CCI 231.03 § 6-3(b) (2011), https://dcp.psc.gov/ccmis/ccis/documents/CCI2_3_1_03.pdf. So she transferred to PHS in 2004. R. 37. At the time she transferred, PHS gave her seven years of TED credit—six for her time earning her MSN, and one for her subsequent year of service—enough to make her an assistant grade officer. R. 50. But because she was a major in the Air Force Reserves, and because interservice transferees maintain the grade held in their prior service, *see* CC23.3.5 § 8-2(b)(2) (2008), https://dcp.psc.gov/ccmis/ccis/documents/CCPM23_3_5.pdf, she transferred into PHS as a full grade officer. R. 420.

Within PHS, Wanca served the Indian Health Service (IHS) for nearly five years before shifting to the Office of Commission Corps Operations (later called the Division of Commissioned Corps Personnel and Readiness, or DCCPR). R. 94-95. By this point, she had been a full grade officer long enough to be considered for permanent promotion to senior grade. But because she obtained her MSN so late in her career, she fell short of the TED credit necessary to be considered for temporary promotion to senior grade—which, given the one-year temporary-promotion prerequisite, effectively blocked her permanent promotion too. So unable to follow the traditional promotion track, she sought an EPP for the next three promotion cycles. R. 60; 76-77; 86-87. But she never broke into the five percent her division nominated. R. 285-94.

Wanca next asked the head of DCCPR, and then the Surgeon General, Vice Admiral Regina Benjamin, to waive the one-year temporary-promotion prerequisite so Wanca could be considered for immediate permanent promotion to senior grade. R. 100-02. Though the waiver was unprecedented, the Surgeon General supported Wanca's request "due to the very unique nature of her background, uniformed service in the [Air Force] and PHS as a Nurse Officer, timing of the receipt of her qualifying degree, and inter-service transfer." R. 108-09. The Assistant Secretary agreed, making Wanca eligible for APPB review. R. 109. And when the

APPB recommended her for permanent promotion to senior grade, R. 99, the Surgeon General and Assistant Secretary concurred. R. 111. Wanca remains the only officer in PHS history to receive this waiver.

Four years after this permanent promotion, Wanca was eligible to be examined for permanent promotion to director grade. So with DCCPR support, she petitioned the then–Acting Surgeon General Boris Lushniak to again excuse the one-year temporary-promotion prerequisite. R. 134-35. He approved, so the APPB examined her. R. 135. But since her score missed the Surgeon General's predetermined threshold, she remained a senior grade officer.

A few months later, PHS transferred Wanca back to IHS. With this new year and new position came a new promotion cycle, and a new waiver request. This time, IHS opposed the request for two reasons, explaining why in a detailed email. R. 712. First, it cited a recent policy change giving other PHS officers similar disparities between their actual experience and their official promotion credit. R. 712. Therefore IHS doubted Wanca's circumstance remained "significantly unique to warrant an individual waiver." R. 712. Second, analogizing to EPPs (which are available only once per grade), IHS resisted supporting another waiver for Wanca, who obtained the waiver just a year earlier but failed to be promoted. R. 712.

Undaunted, Wanca submitted her unapproved request directly to the Surgeon General. R. 193-95. Surprised the request came outside the standard chain of command, the Surgeon General asked IHS if it supported the waiver. R. 262-63. As Wanca knew, IHS did not. R. 260-61. Though it praised Wanca as a "valued member" in an email to the Surgeon General, IHS worried waivers could provide "unfair opportunities and advantages" since permanent promotions are typically easier to obtain than temporary promotions. R. 260-61. Moreover, IHS was reluctant to "open up this [waiver] process as a viable way to circumvent temporary promotion eligibility

9

requirements for any officer who meets permanent promotion eligibility requirements for the equivalent grade." R. 261. A few months later, the new Surgeon General Vice Admiral Vivek Murthy denied Wanca's request without explanation. R. 267.

Thirty days after Murthy denied her waiver, Wanca filed a grievance, alleging PHS acted unfairly, arbitrarily, and capriciously. R. 268-69. She submitted her grievance directly to the Surgeon General, cc'ing her immediate supervisor. R. 268. But the Surgeon General's office rejected the filing, since PHS policy required her to submit the grievance directly to her immediate supervisor, reaching the Surgeon General only after successive appeals. R. 270-73. Thus her direct submission to the Surgeon General was therefore invalid. So her supervisor dismissed her grievance as improperly filed, and subsequent reviewers affirmed. R. 270-73.

Next Wanca filed an EO complaint alleging denial of her waiver and of her grievance amounted to age discrimination. R. 663-68. She filed her complaint on May 5, 2017, making the ROI due August 3, 2017. But that date came and went without a response. (Even still, she never referred her complaint to an SGPAC representative, the remedy PHS regulations provide for overdue ROIs.)

So Wanca filed this suit. She petitioned the Court for mandamus directing PHS to grant her request for a waiver and to act on her EO complaint; she also brought an APA claim seeking similar relief. Compl. ¶¶ 42-53.

Two months later, the EO officer sent the ROI (by then, over five months late). R. 652-59. Wanca promptly submitted her comments via email; the EO officer acknowledged receipt. E-mail from Horace Robinson to Martha Wanca (Feb. 14, 2018, 5:39 AM), ECF No. 21-1. Over a month passed without the EO officer's recommended decision. *Cf.* U.S. Dep't of Health & Human Serv., Equal Employment Opportunity Complaint Recommended Decision 13

[hereinafter Recommended Decision], ECF No. 21-2. Despite the delay, Wanca did not forward her complaint to the Surgeon General, the remedy PHS regulations provide for overdue EO officer decisions. Instead, her counsel followed up with PHS's EO office. *See* Letter from David P. Sheldon to Horace R. Robinson (Oct. 5, 2017), ECF No. 8-2 at 48-49. And when he did, he was met with what he perceived as reprisal threats: "I just hope she doesn't lose her [senior grade] retirement as a result of this;" "Officers have no EO rights;" and "You may not be aware of it, but officers don't have EO rights—check Westlaw and title 42." *Id.*

Wanca tried adding these reprisal threats to her EO complaint. *Id.* But PHS refused, ruling Wanca had not met her burden to prove the statements related to her initial claim. *See* Letter from Cynthia Richardson-Crooks, Dir., EO Compliance & Operations Div., to David R. Sheldon (Dec. 11, 2017), ECF No. 8-2 at 44-46.

The EO officer issued her recommended decision on the original complaint on May 23, 2018—over a month late. *See* Recommended Decision 13. And when she did, she claimed Wanca failed to comment on the ROI, effectively admitting she didn't consider the comments for which her colleague had previously acknowledged receipt. *See* Recommended Decision 2.

## II. Discussion

Both parties now move for summary judgment. The government claims it's entitled to judgment as a matter of law since PHS had no duty to grant Wanca's waiver request, and since PHS properly processed her EO complaint.

Wanca's case turns on her argument that PHS's one-year temporary-promotion prerequisite conflicts with § 211(d). Because of the conflict, she seeks mandamus directing HHS to approve the waiver. Her accompanying APA claim is less clear but appears four-fold: that HHS promulgated a regulation contrary to federal law; that PHS arbitrarily and capriciously

11

denied her third request for a waiver after approving two earlier requests; that PHS violated its own regulations when it refused to adjudicate her grievance; and that PHS violated its own EO-complaint-processing deadlines.

But Wanca's claim unravels because PHS's one-year temporary-promotion prerequisite does not conflict with § 211(d). Given the policy's validity, its waiver turns on PHS discretion. And since this Court cannot direct PHS discretion, her mandamus claim fails. And since PHS denied Wanca's waiver request after a reasoned and deliberate process, faithfully applied its grievance submission policy, and eventually acted on her EO complaint, her APA claims fail too.

The government is entitled to summary judgment. Since the one-year temporary-promotion prerequisite coexists with § 211(d), the government acted within its discretion to deny Wanca's waiver request. And though PHS did not properly handle Wanca's EO complaint, because it has already issued its decision, there is nothing left for this Court to order.

### A. Wanca cannot obtain mandamus relief because waiving the one-year temporary-promotion prerequisite depends on PHS discretion

As Wanca acknowledges, mandamus may issue only if a party demonstrates "a clear right to have an action performed by a government official who refuses to act." Pl.'s Mem. L. 10, ECF No. 12. Put differently, "courts do not have authority under the mandamus statute to order *any* government official to perform a discretionary duty." *Swan v. Clinton*, 100 F.3d 973, 977 (D.C. Cir. 1996).

"[A] duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary [i.e., ministerial] if it involves enforcement or administration of a mandatory duty at the *operational level*." *Beatty v. Wash. Metro. Area Transit Auth.*, 860 F.2d 1117, 1127 (D.C. Cir. 1988) (second alteration in original) (internal quotation marks omitted) (quoting *Jackson v. Kelly*, 557 F.2d 735, 737-38 (10th Cir. 1977)).

Waiving an internal policy is paradigmatically discretionary. It involves reconciling competing policy considerations and exercising reasoned judgment. Two different Surgeons General (and one division head) thought this balance favored Wanca's first two waiver requests; a third Surgeon General (and a different division head) thought it defeated her final request. The divergence in outcome does not matter—one official's prior lenience does not alone guarantee a future official's flexibility. What matters is that a deliberative process undergirds both decisions. Since it does, the Court will not second-guess PHS's considered judgment. Just as the Court cannot direct PHS to do something it does not have to, it cannot order PHS to waive its temporary-promotion prerequisite.

Wanca tries arguing the prerequisite contradicts § 211, and so the government cannot hide behind a "discretionary" decision to not enforce an invalid policy. But this argument fails for three reasons.

First, Wanca misunderstands the statute to require all promotions to be based on length of service. But § 211 enumerates three promotion categories, only one depending on service length. *See* § 211(a) ("Promotions of officers of the Regular Corps to any grade up to and including the director grade shall be either permanent promotions based on length of service, other permanent promotions to fill vacancies, or temporary promotions."). Wanca's contrary reading latches onto the word "shall" while ignoring the neighboring "either/or."

Second, the statute actually forecloses the promotion Wanca pursues. Wanca seeks a length-of-service-based promotion from senior grade to director grade, but the statute only contemplates length-of-service-based promotions for officers at the full grade or lower. *See* § 211(d). Section 211 discusses director-grade promotions only in the context of vacancy-filling promotions. *See* § 211(e); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972))).

Third, Wanca tries to force a collision between the one-year temporary-promotion prerequisite and § 211(e)'s requirement that officers spend one year as a full grade officer—either via permanent or temporary promotion—before promotion to the director grade. But this basic condition sets a floor, not a ceiling; the Executive can demand additional qualifications. *See* § 211(a); Exec. Order No. 11,140 § 1(f), 29 Fed. Reg. 1637 (Jan. 30, 1964). And that's what PHS's one-year temporary-promotion prerequisite does here. Rather than conflicting with § 211(e), the prerequisite adds to it.

The one-year temporary-promotion prerequisite does not conflict with § 211, so its waiver turns on PHS discretion. Wanca's mandamus claim fails.

### B. Wanca cannot obtain APA relief under either §§ 706(1) or 706(2)

Wanca advances two different APA claims. First, she asks the Court to use 5 U.S.C. § 706(1) to order PHS to grant her request for a waiver and to act on her EO complaint. Second, she asks the Court to use § 706(2) to set-aside PHS's denial of her waiver request, PHS's rejection of her grievance, and the one-year temporary-promotion prerequisite. Both requests fail.

#### 1. Wanca's § 706(1) claims are nonjusticiable

Wanca invokes § 706(1) to request an order directing PHS to grant her waiver and to act on her EO complaint. Section 706(1) allows courts to compel "agency action unlawfully withheld or unreasonably delayed." If that standard sounds like mandamus relief, that's because

it is. *See Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016) (noting § 706(1) "carrie[s] forward" the common law writ of mandamus (internal quotation marks omitted) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004))). And like mandamus, "§ 706(1) empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act.'" *Norton*, 542 U.S. at 64 (quoting Attorney General's Manual on the Administrative Procedure Act 108 (1947)).

But as explained in Section II.A, PHS's decision to waive the temporary-promotion prerequisite is discretionary. So the Court cannot order the waiver under § 706(1) any more than it could under the Mandamus Act.

Additionally, PHS has already acted on Wanca's EO complaint. So though PHS did not comply with its own claim-processing deadlines, there is nothing for the Court to do now. Since PHS has released its decision (albeit after the deadline), Wanca has already "obtained all the relief that [she] sought." *Monzillo v. Biller*, 735 F.2d 1456, 1459 (D.C. Cir. 2013). Thus her claim demanding PHS act on her EO petition is moot. *See also Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013).

### 2. Wanca cannot obtain § 706(2) relief because she fails to show PHS acted arbitrarily, capriciously, or contrary to law

Wanca's claim for § 706(2) relief fares no better. She asks this Court to set aside PHS's denial of her waiver request, PHS's rejection of her grievance, and the one-year temporary-promotion prerequisite as arbitrary and capricious. Each will be discussed in turn.

First, denial of Wanca's third waiver request. Section 706(2)(a) lets courts set aside executive actions—even discretionary ones—that are arbitrary or capricious. A discretionary action can be arbitrary and capricious if the government never explains why it exercised its discretion in a given manner, especially if it previously decided the issue another way. *See Motor*

*Vehicle Mfs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 57 (1983); *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 815 n.35 (D.C. Cir. 1983). But even though PHS's denial of Wanca's third waiver request diverged from its previous decisions, PHS adequately explained the departure. As Section II.A notes, Wanca's division head thoughtfully considered the request and justified in (two) writings its decision to not support the third request. And given her thorough and well-reasoned opposition, it was unsurprising—and certainly not arbitrary and capricious—for the Surgeon General to summarily deny the waiver.

Second, dismissal of Wanca's grievance. To be sure, PHS's noncompliance with its own policy would be arbitrary and capricious. *See Nat'l Biodiesel Bd. v. Envtl. Prot. Agency*, 843 F.3d 1010, 1018 (D.C. Cir. 2016). But to strike down government action for noncompliance with its own regulations, the government action must be either "plainly erroneous or inconsistent" with the regulation's text. *Great Lakes Comnet, Inc. v. Fed. Commc'ns Comm'n*, 823 F.3d 998, 1002 (D.C. Cir. 2016).

Yet here, PHS's dismissal of Wanca's grievance fits perfectly with PHS policy. CCI 211.04 § 8-4(a) requires officers submit grievances directly to their immediate supervisors, providing for review by higher officials like the Surgeon General only after appeal. But Wanca submitted her grievance directly to the Surgeon General, attempting to satisfy CCI 211.04 by cc'ing her immediate supervisor, but in reality skirting his judgment and leaping over any intermediate review. And CCI 211.04 § 8-4(b)(2) put Wanca on notice that PHS could "[r]eject [her] complaint due to an untimely application or other procedural defects." So PHS did not act arbitrarily or capriciously in blocking Wanca's attempted circumnavigation of the grievance process.

Finally, the one-year temporary-promotion prerequisite writ large. Plaintiffs challenging an entire policy as arbitrary and capricious face an uphill climb: they bear the burden of showing the policy lacked reasoned justification. *See Van Hollen, Jr. v. Fed. Election Comm'n*, 811 F.3d 486, 496 (D.C. Cir. 2016). But Wanca does not even try carrying this burden at the summary judgment stage, instead rehashing her mistaken argument that the one-year temporary-promotion prerequisite conflicts with § 211. Because Wanca does not provide competent evidence at the summary judgment stage indicating the one-year promotion prerequisite lacked reasoned justification, her challenge under § 706(2) fails.

In sum, neither the policy nor PHS's treatment of Wanca were arbitrary or capricious.

## III. Conclusion

The Court will grant the government's motion for summary judgment and deny Wanca's cross-motion. A separate order follows.

Date: February 7, 2019

_____
Royce C. Lamberth
United States District Judge